## MATTHEWS v. TOWELL.

(Court of Civil Appeals of Texas. San Antonio. May 10, 1911.)

1. PLEADING (§ 228*)—EXCEPTIONS—ADMISSIONS.

The allegations in a petition to which exceptions are taken must, for the purpose of determining the sufficiency of the petition, be taken as true.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 589, 590; Dec. Dig. § 228.*]

2. LIMITATION OF ACTIONS (§ 48*) — BILLS AND NOTES—EXTENSION.

The extension of the time of the payment of a promissory note or other chose in action, based upon a valuable consideration, for a definite period, is a new contract against which the statute of limitations does not begin until the expiration of the period of such extension.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 259–265; Dec. Dig. § 48.*]

3. LIMITATION OF ACTIONS (§ 48*)—BILLS AND NOTES—EXTENSION.

Where the extension of the time of payment of several claims against decedent's estate was by agreement of plaintiff with decedent, upon valuable consideration for the definite period of one year from the date of each extension, and the allegations of the petition showed that four years had not elapsed from the time of the last extension of each note to the time of the maker's death, none of the claims is barred by the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 259–265; Dec. Dig. § 48.*]

4. FRAUDS, STATUTE OF (§ 45*)—ORAL AGREEMENT—EXTENSION OF NOTE.

Where notes were extended for only one year's time, the contracts for such extension were not within the statute of frauds, because they were not in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 45.*]

5. FRAUDS, STATUTE OF (§ 156*) — ORAL AGREEMENT — EXTENSION OF NOTE—PLEADING.

If contracts for the extension of notes were required to be in writing to relieve them from the statute of frauds, it could be proved on the trial that they were in writing, without such an averment in the petition.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 370, 372; Dec. Dig. § 156.*]

6. MORTGAGES (§ 305*)—INCIDENTS TO DEBT —EXTENSION OF NOTE.

A mortgage securing notes, made by decedent on his own property, being merely incident to the debts, is not affected by contracts extending the time of their payment, but remains in full force and effect.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 889–894; Dec. Dig. § 305.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by John Matthews against Ike Towell, administrator of John Robbins, deceased, on a rejected claim against the estate. From a judgment sustaining exceptions to the petition, plaintiff appeals. Reversed and remanded.

This is a suit by appellant against appellee on a rejected claim against his testator's estate. Exceptions were sustained to plaintiff's petition, and final judgment rendered against him in favor of the defendant. The questions presented on this appeal from the judgment require a statement of the substance of the pleadings of the parties. The plaintiff alleged, substantially, in his original petition:

That John Robbins died on August 15, 1908, and that Ike Towell is the administrator of his estate, having been duly appointed by the county court of Matagorda county on November 21, 1908. That on October 7, 1901 decedent was indebted to plaintiff in the sum of $2,491.24 evidenced by four promissory notes for the sum of $622.81, dated February 7, 1901, payable, respectively, as follows: The first, one day after date; the second, October 1, 1901; the third, October 1, 1902; and the fourth, October 1, 1903; that each note bears interest from its date at the rate of 10 per cent. per annum, which is payable annually—all past due interest bearing interest at the same rate—each note containing the usual maturity clause, and specially stipulates that if default is made in its payment at maturity, and it is placed in the hands of an attorney for collection, or suit brought thereon, that the maker shall pay 10 per cent. on both principal and interest then due as attorney's fees. That on February 7, 1901, defendant's intestate executed to Jesse Matthews, as trustee, a deed of trust for the purpose of securing plaintiff in the prompt payment of said notes, wherein decedent conveyed to Jesse Matthews, as trustee, the following described two tracts of land situated in Matagorda county, Tex., being out of and a part of the Wm. Rabb league, No. 46 on Coney creek, more particularly described as follows: (Here follows a specific description of each tract.) That said deed of trust recites it is a renewal of a former deed of trust, and for the purpose

of securing the sums due on the notes therein described, including the accrued unpaid interest thereon, which sums of money constitute the original purchase money paid by John Matthews for John Robbins, defendant's intestate, at the latter's request, upon the following trust, to wit: That it was proposed, desired, and intended by John Matthews and John Robbins, deceased, that said deed of trust should express the existing fact that the amounts secured thereby were advanced and paid by John Matthews for decedent at the latter's request as a part of the original purchase money for said tract of land; and that it was the purpose and intention of both to secure John Matthews in the repayment of said sum of money by recognizing and fixing a vendor's lien upon said land for the amount so advanced; and that, if said instrument failed or omitted to fully and completely express such intention, plaintiff then alleges that such failure or omission was due to the neglect of the conveyancer in drafting the same, which was signed in its present form by both parties under the belief that it expressed the retention of a vendor's lien upon the property; and that such failure or omission was due to a mistake of the conveyancer who acted for both parties, and it was signed by both under a mutual mistake and under the impression that it contained language admitting the existence of the vendor's lien in favor of plaintiff, John. Matthews, on account of the amounts paid on the original purchase price.

That John Robbins, deceased, was to possess and enjoy the use and benefit of said land until default should be made in the payment of said indebtedness or any part thereof, and, upon such default, the trustee, upon the request of plaintiff or holder of said notes, should sell the land to the highest bidder for cash, at public outcry in front of the courthouse door, etc., and make deed to the purchaser with the usual covenants and warranties, receive proceeds of sale and apply the same to the payment of said notes, etc. That the time of payment of each of the notes was extended during the lifetime of decedent, by agreement, from July 1, 1902, for a period of one year, again, on May 4, 1902, for a period of one year, again, on July 18, 1905, for a period of one year, and again, on January 1, 1907, the time of payment was extended for a period of one year, which extensions were all made for a valuable consideration, that the four notes sued on represent an extension of the vendor's lien notes given for a part of the original purchase price for said land, and that the money obtained on account of the extension of said notes was applied as a part of the original purchase price thereof. That John Robbins died without having paid the money evidenced by said notes or any part thereof, and that the same is due and unpaid. That after his death the plaintiff placed the four notes in the hands of attorneys for collection, and

has been forced to institute suit on them— plaintiff promised and agreed to pay said attorneys the 10 per cent. provided in the note as collection fees. That such fee is reasonable, and that the services of the attorneys were required for the presentation of the notes as a claim against the estate of the deceased to the administrator, Ike Towell. That the deed of trust referred to is in full force and effect and a valid and subsisting claim against said land. That on April 10, 1909, the claim of plaintiff for the amount due on said notes, principal, interest, and attorney's fees, duly authenticated as required by law, was duly presented to defendant, administrator of said estate for acceptance and allowance, and that defendant refused to allow the same or any part thereof, but rejected the same in writing.

That on February 7, 1901, John Robbins, deceased, was indebted to plaintiff in the sum of $953.30, evidenced by two certain promissory notes for the sum of $476.65 each, of date February 7, 1901, the first being due three months after date, and the second six months after date, each bearing interest at the rate of 10 per cent. per annum from January 1, 1901, interest payable annually, all past interest to bear interest from maturity until paid at the rate of 10 per cent. per annum, each containing the usual maturity clause, and the stipulation that if default were made in payment at maturity and the note placed in the hands of an attorney for collection, or suit brought thereon, to pay 10 per cent. on both principal and interest on the amount due as attorney's fees.

That on February 7, 1901, John Robbins, deceased, executed and delivered to Jesse Matthews his certain deed of trust, as trustee for the use and benefit and for the purpose of securing plaintiff in the payment of said notes, principal and interest, whereby he, the said Robbins, conveyed to said trustee of land situate in Matagorda county out of and a part of the Wm. Rabb league No. 40, on Coney creek and described as follows: (Here follows the particular description of the tract.) It then alleges that it was proposed, desired, and intended by John Matthews and John Robbins, deceased, that the deed of trust should express the existing fact that the amount secured by it was money advanced and paid by plaintiff to John Robbins at his request as a part of the original purchase money for said tract of land, and that it was the intention of both parties that it should secure Matthews in the repayment of the sum by recognizing the vendor's lien on said property for the sum so advanced; and that, if the instrument failed or omitted to clearly express such intention, such failure or omission was due to the neglect of the conveyancer who drafted the same, and that it was signed in its present form by both parties under the belief that it expressed the retention of such vendor's lien as intended, and that such failure or omission of the

scrivener was due to a mistake of said scrivener, who acted for both parties, and was signed by them under a mutual mistake, each believing that it expressed the existence of such lien.

That John Robbins, deceased, was to possess and enjoy the use and benefit of said land until default should be made in the payment of said indebtedness, and upon such default the trustee at the request of plaintiff or the holder of said notes should sell said land to the highest bidder for cash, etc. And after such sale to make purchaser a good and sufficient deed to the property sold, with the usual covenants and warranties, and apply the proceeds of sale to the payment of said notes, etc.

That the time of payment of the notes was extended by agreement, upon valuable considerations, from July 1, 1902, for one year; and afterwards on May 4, 1904, for a period of one year, and again on July 18, 1905, for a period of one year; and, again, on January 1, 1907, it was extended for another period of one year. That the two notes just before mentioned represent the extension of the vendor's lien notes given for the original purchase money for said land, and that the sums of money obtained on account of the execution of said notes were applied as a part of the original purchase money of said property.

That John Robbins died without having paid the money evidenced by said note, and that the same remains due and unpaid. That thereafter plaintiff placed them in the hands of attorneys for collection, promising and agreeing to pay them for their services in collecting the 10 per cent. provided as attorney's fees. That the attorney's fee is reasonable and services of an attorney necessary to the presentation of the notes as a claim of plaintiff against the estate of the decedent. That said deed of trust remains in full force and effect, and is a valid and subsisting lien on said land. That on April 10, 1909, the claim of plaintiff for the amount due on said notes, principal, interest, and attorney's fees, duly authenticated as required by statute, was presented to defendant, Ike Towell, administrator, as aforesaid, for acceptance and allowance, and defendant then refused to allow said claim or any part thereof, but, in writing, rejected the same.

That on January 16, 1909, John Robbins, deceased, was indebted to plaintiff in the sum of $135, evidenced by one certain promissory note of that date, payable to plaintiff on October 1, 1909, with interest at the rate of 10 per cent. per annum until paid, interest payable upon its accrual. That this note was given for three mules (each of which is particularly described in the petition), to secure the payment of which a lien was expressly given upon said animals. That said note contained the usual maturity clause,

especially stipulating that, if default is made in its payment, and that if it is placed in the hands of an attorney for collection, or suit brought thereon, 10 per cent. in addition, on both principal and interest, should be paid as attorney's fees. That the time of payment of the note, by express agreement of the parties based upon a valuable consideration, was extended on January 1, 1902, for a period of one year; and, on May 7, 1904, a year from that date; on July 18, 1905, for a like period from that time; and on January 1, 1907, it was extended another year; that plaintiff placed the note in the hands of attorneys for collection, agreeing to pay them for their service the 10 per cent. stipulated as attorney's fees, which is a reasonable compensation for their services; that the lien given on the mules is valid and subsisting. As to this item of indebtedness the petition contains such allegations of its presentation to and rejection by the administrator of decedent's estate as are alleged as to the foregoing claims.

It also declares upon a claim of indebtedness of $40 incurred on December 28, 1899, for the purchase money for a brown mare mule, which is evidenced by decedent's promissory note of that date payable to plaintiff on October 1st, after its date. As to this note, the petition contains allegations as to attorney's fees, lien, extension, its being unpaid, its having been placed in the hands of attorneys for collection, its having been duly presented to the administrator as a claim against decedent's estate and of its rejection by him, such as are made in relation to the other claims sued on. The petition concludes with a prayer for judgment for the amounts due on the several claims declared on, principal, interest, and attorney's fees; that plaintiff's alleged liens on the lands described and on the live stock, or the proceeds realized from the sale, be allowed and foreclosed, for costs, and that such judgment be certified to the county court of Matagorda county to be there classified and enforced according to law; and for such other and further relief, both special and general, at law, and in equity, to which he may be entitled.

The answer of the defendant contains a general demurrer and two special exceptions to plaintiff's petition. The first is that it appears from its face that plaintiff's cause of action as therein stated accrued more than four years before the commencement of this suit, and more than four years before the death of John Robbins, deceased, and is barred by the statute of limitations. And the second that the petition contains no averments that the alleged renewals or extensions of the times and dates of the payment of the notes declared on were in writing, and duly signed by John Robbins, deceased. It was upon the court's sustaining these special exceptions to plaintiff's original petition

that the judgment appealed from was rendered.

Gaines & Corbett, for appellant.   Holland & Krause, for appellee.

NEILL, J. (after stating the facts as above).   [1, 2] In our view of the case we need only consider the assignments which complain of the court's action in sustaining the special exceptions to plaintiff's original petition.   The allegations in the petition to which the exceptions were taken must for the purpose of determining its sufficiency as against them be taken as true.   Taking such averments as established facts, it will be perceived that the time of payment of each and every note upon which plaintiff's claim and demand against the defendant's intestate's estate is based, was, during the lifetime of decedent, upon a valuable consideration, extended from year to year.   It is now too well settled to admit of question that the extension of the time of the payment of a promissory note or other chose in action, based upon a valuable consideration, for a definite period, is a new contract against which the statute of limitations does not begin until the expiration of the period of such extension.   Benson v. Phipps, 87 Tex. 578, 29 S. W. 1061, 47 Am. St. Rep. 128; Robson v. Brown, 57 S. W. 83, 686; Casey-Swasey Co. v. Anderson, 37 Tex. Civ. App. 223, 83 S. W. 840; Carter-Battle Grocer Co. v. Clarke, 91 S. W. 882; Wright v. Deaver, 52 Tex. Civ. App. 130, 114 S. W. 165; Fambro v. Keith, 122 S. W. 40; Kearby v. Hopkins, 14 Tex. Civ. App. 166, 36 S. W. 506.

[3-5] The extensions of the time of payment of the several claims having been by agreement of plaintiff and decedent, upon valuable considerations, for a definite period of only one year commencing from the date of each extension, and it being apparent from the allegations that four years had not elapsed from the time of the last extension of each note to the time of Robbins' death, none of the claims upon which the action is based is barred by the statute.   The several contracts of extension, being for only one year's time, were not within the statute of frauds.   Besides, if the contracts of extension were required to be in writing to relieve them from such statute, it could have been proved on the trial that they were in writing without its having been averred in plaintiff's petition.

[6] The several mortgages securing the indebtedness, having been made by the decedent on his own property, being merely incidents to the debts they were made to secure, were not affected by the contracts extending the time of their payment, but remained in full force and effect as such security.   Jones on Mort. § 942; Wiltsie, Mort. Foreclosure, §§ 53, 54.

For reason of the error in sustaining said exceptions to plaintiff's original petition, the judgment is reversed and the cause remanded.